IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Pharmacists Mutual Insurance Company, | ) ) ) |
| Plaintiff, | ) C.A. No. 7:08-3631-HMH ) ) |
| vs. | ) **OPINION AND ORDER** ) |
| Cincinnati Insurance Company, | ) ) ) |
| Defendant. | ) ) |

This matter is before the court on the parties' cross-motions for summary judgment. Plaintiff Pharmacists Mutual Insurance Company ("Pharmacists Mutual") filed this action alleging that it is entitled to recover certain prejudgment and postjudgment interest from the Defendant Cincinnati Insurance Company ("Cincinnati"). After consideration, the court grants Cincinnati's motion for summary judgment and denies Pharmacists Mutual's motion for summary judgment as moot.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case is related to a previous declaratory judgment action, civil action number 7:04-1057-HMH, Cincinnati Ins. Co. v. Urgent Care Pharmacy, et al. (hereinafter "2004 action"), wherein this court determined the extent and limits of liability insurance coverage provided under Cincinnati's insurance policy number BOP 176 99 62 ("Policy") for the claims of G. David Scyster, Administrator of the Estate of Mary Virginia Scyster, Virginia Rauch, Robert Conrad, Administrator of the Estate of Vivian Conrad (hereinafter "Conrad"), David

1

Boles, and Annie McGill (collectively "injured parties"). The injured parties were personally injured or a family member died as a result of receiving contaminated injections of methylprednisolone (hereinafter "Drug").[1] Cincinnati provided primary insurance coverage to R. Ken Mason, Jr. ("Mason"), the pharmacist that compounded the Drug, and Urgent Care Pharmacy, the pharmacy that employed Mason and sold the Drug. In addition, Pharmacists Mutual provided individual professional liability insurance coverage to Mason under another policy, policy number PHL 0055751. In the 2004 action, the court granted Cincinnati's motion for partial summary judgment on August 10, 2007, finding that the liability limit under the Policy was $1,005,000 (hereinafter "August 10, 2007 Order").

> The court concluded
>
> as a matter of law that: 1) Cincinnati's aggregate limit of liability coverage under the Policy for the occurrences of bodily injury suffered by Defendants or Defendants' decedents is $1,005,000, and 2) Cincinnati shall pay its $1,005,000 liability limits within 60 days of the entry of this Order, and 3) upon such payment, Cincinnati's liability coverage will have been exhausted under the Policy and this case will be dismissed.

(August 10, 2007 Order 3.)

On October 3, 2007, the court granted Cincinnati's motion to deposit the $1,005,000 with the court in an interest-bearing account. In addition, on November 26, 2007, the court granted the injured parties' motion for an order of disbursement of the funds. As noted above, Conrad was one of the injured parties. The funds were disbursed pro rata according to the injured parties' specifications, which included interest on Conrad's April 14, 2005 state court judgment. The November 26, 2007 disbursement order stated in pertinent part that "[h]aving

---

[1] Methylprednisolone is a sterile injectable drug that is typically injected into the lower back to treat pain.

2

paid its limits of coverage, Cincinnati Insurance Company's duty to defend Urgent Care Pharmacy or its employees regarding other claims based on the compounding and distribution of methylprednisolone acetate is hereby extinguished, as provided in Section II, Paragraph A.1.a.(2) of its policy." (November 26, 2007 Order 2.) Mason was a party in the 2004 action and never responded to Cincinnati's motion for partial summary judgment. No appeal was taken in the 2004 action.

On October 29, 2008, Pharmacists Mutual filed the instant action alleging that Cincinnati is liable to Pharmacists Mutual "on the grounds of equitable subrogation/reimbursement/indemnity for $245,234.74, consisting of certain pre and post judgment interest due by Cincinnati [on the April 15, 2005 Conrad state court judgment[2]] pursuant to a policy of insurance issued by Cincinnati." (Pharmacists Mutual Mem. Supp. Summ. J. 1.)

Pharmacists Mutual alleges that "the inclusion of interest in the [disbursement] calculation was incorrect because the Cincinnati Policy clearly provides that Cincinnati is obligated to pay certain pre and post judgment interest in addition to the policy limits of $1,005,000." (Id. 3.) The Policy provides for prejudgment and postjudgment interest in a section entitled "Coverage Extension – Supplementary Payments" which states in pertinent part that

> In addition to the Limit of Insurance, we will pay, with respect to any claim or 'suit' we defend:

---

[2] The judgment awarded to Conrad entered on April 15, 2005, provided that interest of $187.83 per day was to be paid by Urgent Care Pharmacy and Mason "beginning from the date of filing the Complaint, January 30, 2003, until the judgment [was] paid."

3

> . . . .
>
> (6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> (7) All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

(Id. Ex. 2 (Policy, Sec. II.A.1.e).) Cincinnati filed a motion for summary judgment on September 1, 2009. Pharmacists Mutual filed a motion for summary judgment on September 3, 2009. The parties have filed responses and replies to the motions. Therefore, both motions are ripe for decision.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Cincinnati's Motion for Summary Judgment

Cincinnati moves for summary judgment on Pharmacists Mutual's claim alleging, in part, that res judicata bars this action. "Res judicata is the branch of the law that defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies. Res judicata ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." Plum Creek Dev. Co. v. City of Conway, 512 S.E.2d 106, 108 (S.C. 1999). "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." Id. at 109. "To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." Id.

First, Conrad and Mason were parties to the 2004 action. Pharmacists Mutual seeks to recover the interest that it paid on the Conrad judgment from Cincinnati arguing that the Policy obligated Cincinnati to pay the interest. Conrad "assigned all of its rights against Cincinnati for this interest to Pharmacists Mutual." (Compl. ¶ 28.) Pharmacists Mutual has no greater rights than its assignor. Brendle's Stores, Inc. v. OTR on Behalf of Bd. of Trustees, 978 F.2d 150, 154

(4th Cir. 1992). Further, Pharmacists Mutual stated in its complaint that it "is subrogated to the rights of its insured, Mason." (Compl. ¶ 29.) With respect to its claim, Pharmacists Mutual's rights are no greater than its insured, Mason. Brendle's Stores, Inc., 978 F.2d at 154 (citing W.M. Kirkland, Inc. v. Providence Washington Ins. Co., 216 S.E.2d 518, 521 (S.C. 1975) (assignee has no higher rights than assignor and subrogee has no higher rights than subrogor)).

Pharmacists Mutual alleges that it is not a privy of Conrad and Mason because it was not a party in the 2004 action and did not have the same interests as Conrad and Mason in that action. (Pharmacists Mutual Mem. Opp'n Summ. J. 3-4.) However, Pharmacists Mutual overlooks the fact that Conrad and Mason were parties in the 2004 action and that Pharmacists Mutual's "equitable subrogation/reimbursement/indemnity"[3] claim in the instant suit arises from an assignment of rights from Conrad and as subrogee for Mason. Pharmacists Mutual has stepped into the shoes of Conrad and Mason to assert that the interest should have been paid under the Policy. The claim for interest belonged to Conrad under the Policy. Conrad assigned

---

[3] "Subrogation may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right." Kuznik v. Bees Ferry Assoc., 538 S.E.2d 15, 30 (S.C. Ct. App. 2000). "Subrogation enables the insurer to recover the amount paid to its insured out of any judgment or settlement proceeds received by the insured from the third party." Id. "The elements of the doctrine of equitable subrogation are (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity." Id.

all rights to the interest to Pharmacists Mutual. Therefore, privity is not an issue in the instant action because Conrad and Mason were parties in the 2004 action.

Second, the subject matter in the 2004 action concerned whether the Policy covered the claims of the injured parties and if so, the extent and limits of coverage that Cincinnati was obligated to provide under the Policy. Pharmacists Mutual alleges that pursuant to the Policy, Cincinnati was obligated to pay prejudgment and postjudgment interest in addition to the payment of the liability limits of $1,005,000. In the 2004 action, the court determined that Cincinnati's "aggregate limit" of liability coverage was $1,005,000, and ordered that upon the payment of these funds, the case would be dismissed. (August 10, 2007 Order 3.) In the instant action, Pharmacists Mutual is arguing that Cincinnati's Policy covered prejudgment and postjudgment interest in addition to the liability limits of $1,005,000 and Cincinnati has failed to pay it as required by the Policy. The issue before the court in the 2004 action was the extent and limits of Cincinnati's coverage under the Policy. As in the 2004 action, the subject matter in the instant action concerns the extent and limits of coverage afforded under the Policy. Therefore, identity of the subject matter exists between the instant action and the 2004 action.

Third, the extent and limits of coverage, which implicitly includes coverage for interest under the Policy, were litigated in the 2004 action. Pharmacists Mutual argues that the specific issue of prejudgment and postjudgment interest was not actually litigated in the 2004 action. Further, Pharmacists Mutual argues that

> [s]uits for declaratory judgments do not fall within the rule that a former judgment is conclusive not only of all matters actually adjudicated thereby, but, in addition, of all matters which could have been presented for adjudication. A declaratory judgment is not res judicata as to matters not at issue and not passed upon. It is

only a bar to matters which were actually litigated, not to those that might have been litigated.

(Pharmacists Mutual Mem. Opp'n Summ. J. 7 (quoting 22A Am. Jur. 2d Declaratory Judgments § 248 (citations omitted)).) The court agrees. A "declaratory judgment is not res judicata as to matters not at issue and not passed upon. The doctrine is only a bar to matters which were actually litigated, not those that might have been litigated." Robison v. Asbill, 492 S.E.2d 400, 401 (S.C. Ct. App. 1997) (internal citation and quotation marks omitted). However, the court finds that the extent and limits of coverage provided under the Policy were actually litigated.

Pharmacists Mutual, as assignee for Conrad and subrogee for Mason, is attempting to challenge the court's order regarding the extent and limits of coverage under the Policy. "A declaratory decision should 'settle the controversy' about the extent of insurance coverage." Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000). The prejudgment and postjudgment interest provision is part of the coverage afforded under the Policy. The interest provision in the Policy is titled "Coverage Extension – Supplementary Payments." (Pharmacists Mutual Mem. Supp. Summ. J. Ex. 2 (Policy, Sec. II.A.1.e).) In the injured parties' counterclaim in the 2004 action, they specifically requested that the court

> declare that the policy issued by [Cincinnati] to Urgent Care does not provide for any limit of liability for coverage for professional liability under the policy and that the policy therefore provides coverage for the full amount of each these Defendants/Counterclaim Plaintiffs' claims against Defendants Urgent Care, Mason and Burns as determined by any final judgment in Defendants/Counterclaim Plaintiff's currently pending actions.

(Counterclaim Prayer for Relief 4.)

Cincinnati moved for partial summary judgment seeking a declaration that the limits of the insurance coverage were $1,005,000. The injured parties did not contest Cincinnati's motion. To the contrary, the injured parties responded that they were

> not aware of any material facts to dispute Plaintiff Cincinnati's Motion for Partial Summary Judgment that *the total limits of insurance coverage available under Plaintiff's policy is $1,005,000.00* based on the undisputed facts that coverage provided by the policy is for "Products—Completed Operations Hazard" with aggregate limits of $1,005,000.00.

(Injured Parties Resp. Cincinnati Mot. Partial Summ. J. 4 (emphasis added).) Further, the injured parties stated that

> [i]f the Court were inclined to grant Plaintiff's Motion for Partial Summary Judgment, Defendants respectfully request that the Court find 1) that the liability limits under the Cincinnati policy are $1,005,000.00, 2) that $1,005,000.00 is Plaintiff Cincinnati's limit or liability coverage for the multiple occurrences of bodily injury suffered by Defendants or Defendants' decedents and 3) upon Plaintiff Cincinnati's payment of its $1,005,000.00 liability limits, the *limits of Cincinnati's liability coverage will have been exhausted* and this case will be dismissed.

(Id. (emphasis added).) In granting Cincinnati's motion for partial summary judgment, the court determined as a matter of law the extent of coverage under the Policy. The court held

> as a matter of law that: 1) Cincinnati's *aggregate limit of liability coverage* under the Policy for the occurrences of bodily injury suffered by Defendants or Defendants' decedents is $1,005,000, and 2) Cincinnati shall pay its $1,005,000 liability limits within 60 days of the entry of this Order, and 3) *upon such payment, Cincinnati's liability coverage will have been exhausted under the Policy and this case will be dismissed.*

(August 10, 2007 Order 3 (emphasis added).) In addition, no party filed a motion to reconsider the court's grant of Cincinnati's motion for partial summary judgment. Further, the injured parties sought coercive or consequential relief in the 2004 action requesting that the court issue an order disbursing on a pro rata basis the funds owed to them based on the court's declaration

9

that the Policy's liability coverage limits were $1,005,000. Robison, 492 S.E.2d at 401 (noting that in a declaratory judgment action it is permissible for a "court to grant not only consequential or incidental relief, but also coercive relief where the proper grounds for such relief appear from the pleadings and proof"); Winborne v. Doyle, 59 S.E.2d 90, 93 (Va. 1950) ("The general rule is that in a declaratory judgment proceeding coercive relief is not sought. However, coercive relief may be demanded – that is, the rights of the parties may not only be determined, but they may be enforced, in the one action."); see e.g., Hoiengs v. County of Adams, 516 N.W.2d 223, 239 (Neb. 1994) ("[A] court may . . . grant a money judgment as consequential relief in a declaratory judgment action."). Further, res judicata applies to any coercive or consequential relief sought by the parties in a declaratory judgment proceeding. Winborne, 59 S.E.2d at 93 (Va. 1950) (noting that the plaintiff's claim for rental payments on property that he was owed declared in the declaratory judgment proceeding was not res judicata in a separate action because the plaintiff did not request that the declaratory judgment court enforce his rights). Unlike in Winborne, in the 2004 action, the injured parties requested that the court enforce their rights to the liability coverage limits and disburse the $1,005,000. In the order of disbursement, the court disbursed the $1,005,000 on a pro rata basis according to the injured parties' calculations. Further, the pro rata distribution included prejudgment and postjudgment interest for Conrad. Conrad was aware that the April 15, 2005 state court judgment provided for interest. The Conrad state court judgment was an exhibit to the injured parties' motion for disbursement, and as noted, the pro rata calculations for disbursement included interest for Conrad.

Although not labeled a judgment,[4] the order of disbursement concluded Cincinnati's obligations under the Policy and awarded the funds according to the injured parties' calculations. After the conclusion of the 2004 action, Conrad's attorney requested the payment of prejudgment and postjudgment interest above the $1,005,000 in a February 1, 2008 letter. However, no appeal was taken in the 2004 action challenging the court's findings regarding the limits of coverage under the Policy or the inclusion of interest for Conrad in the disbursement order's pro rata calculations.

Based on the foregoing, Conrad and Mason are barred from challenging the court's findings in the 2004 action regarding the extent and limits of coverage provided in the Policy under res judicata. In turn, Pharmacists Mutual cannot, as an assignee of Conrad and subrogee of Mason, challenge the court's finding regarding the limits of Cincinnati's liability coverage in this action. Having found that the extent and limits of Cincinnati's coverage under the Policy and the payment of the coverage limits was actually litigated in the 2004 action, Pharmacists Mutual's claim is barred by the doctrine of res judicata.[5]

---

[4] If the clerk's office erred in not entering judgment in a separate document, it was merely a clerical error that should not affect the finality of the 2004 action.

[5] Having found that Pharmacists Mutual's claim is barred by the doctrine of res judicata, it is unnecessary for the court to address Pharmacists Mutual's motion for summary judgment on the basis of equitable subrogation. Further, the court declines to address Cincinnati's other arguments in support of summary judgment.

11

Therefore, it is

**ORDERED** that Cincinnati's motion for summary judgment, docket number 22, is granted. It is further

**ORDERED** that Pharmacists Mutual's motion for summary judgment, docket number 23, is denied as moot.

**IT IS SO ORDERED.**

                                                  s/Henry M. Herlong, Jr.
                                                  Senior United States District Judge

October 1, 2009
Greenville, South Carolina